IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

PHILLIP L. COCHRAN,          )
                             )
      Plaintiff,             )
                             )
        v.                   )
                             )     1:06cv1328 (JCC)
ERIC H. HOLDER,              )
                             )
      Defendant.             )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant's Motion
for Summary Judgment [Dkt. 57] pursuant to Federal Rule of Civil
Procedure 56(c).  For the following reasons, the Court will
grant Defendant's Motion.

**I. Background**

This case arises out of a federal employee's claim of
disability discrimination pursuant to the Rehabilitation Act of
1973, 29 U.S.C. § 791 *et seq.*  Plaintiff Phillip Cochran
("Cochran" or "Plaintiff") alleges two counts of employment
discrimination on the basis of his hearing loss.  Count I,
"Constructive Discharge," alleges that his voluntary retirement
from the United States Marshall Service (the "USMS") constituted
a constructive discharge because the USMS "terminat[ed] him
solely because of his disability and/or perceived disability,"

namely, his inability to meet the required hearing standards of the USMS, and because it failed to provide him with a reasonable accommodation in lieu of retirement. (Compl. ¶¶ 30-35.) Count II, "Refusal to Reinstate," alleges that during his attempt, two years later, to obtain reinstatement to the USMS, the USMS "refused to reinstate Plaintiff" due to his hearing loss and failed to provide Plaintiff with a reasonable accommodation. (Compl. ¶¶ 36-40.) The undisputed facts are as follows.[1]

Plaintiff is a former Deputy United States Marshall ("DUSM"), who has served in that capacity from 1986 to 1993. (Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem."), Ex. 13) At the time of his retirement Plaintiff was assigned to the Northern District of Texas, Lubbock sub-office. (Def.'s Mem., Ex. 13.) DUSMs are required to perform several "critical" functions. They provide "Court Security/Protective Services," constituting "protection for judicial officers, members of the court family, juries, and other USMS protectees" as well as "for juries/witnesses, evidence and/or prisoners/defendants in court." (Def.'s Mem. ¶ 3, Ex. 13; Plaintiff's Opposition to Def.'s Mot. for Summ. J.

---

[1] In accordance with Local Rule 56, this Court will, "in determining a motion for summary judgment, [] assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion." E.D. Va. Local Rule of Civil Procedure 56(B). Where the Court lists no citation to the Opposition, it is invoking Rule 56 and takes the undisputed facts as stated by the moving party as admitted.

("Pl.'s Opp.")[2] Material Statement of Facts ("Facts") ¶ 3.)

DUSMs must "attend[] court" in order to "monitor the proceedings and ensure the safety" of all participants to that proceeding. (Def.'s Mem. ¶ 3, Ex. 13; Pl.'s Opp. Facts ¶ 3.) DUSMs are also responsible for "Prisoner Handling and Transportation," providing "safe transportation and handling of prisoner[s]," and "search[]/receive[]/secure[] inmates for transport within the district or the USMS National Prisoner Transportation System." (Def.'s Mem. ¶3, Ex. 13; Pl.'s Opp. Facts ¶ 3.) Some DUSMs are also responsible for the investigation and apprehension of fugitives, "develop[ing] an investigation plan. . . organizing and conducting raids/arrests pursuant to arrest and search warrants." (Def.'s Mem. ¶ 3, Ex. 13; Pl.'s Opp. Facts ¶ 3.)

The USMS has imposed medical standards in order to ensure that it only employs qualified individuals capable of the safe and effective performance of these "diverse" duties. (Def.'s Mem. ¶¶ 3-4; Pl.'s Opp. Facts ¶¶ 3-4.) The Medical Qualifications for USMS Operational Personnel required, at the time of Plaintiff's employment, that "the general physical condition" of a DUSM "must in no way involve any defect which might become a hazard to themselves of others" and "they are

---

[2] Plaintiff has submitted its Opposition without page numbers. When the Court refers to the Opposition it will attempt to identify the specific reference by section number (*i.e.* "III.A.1.") When it is referring to a particular paragraph of the "Material Statement of Facts" it will do so by the specific paragraphs number (*i.e.* "Pl.'s Opp. Facts ¶ 3".)

required to have good vision and hearing." (Def.'s Mem. ¶ 4, Ex

18 (USMS Medical Qualifications 1993); Pl.'s Opp. Facts ¶ 4.)

Of particular significance in this case is the USMS medical

qualification at the time of Plaintiff's retirement requiring

that DUSMs: "Must be able to hear the whispered voice at 15 feet

with each ear. Using an audiometer for measurement, there

should be no loss of 30 or more decibels in each ear at the 500,

1000, and 2000 Cycles Per Second Levels. A hearing aid is not

permitted." (Def.'s Mem. ¶ 4, Ex 18; Pl.'s Opp. ¶ 4.)

Significantly, the policy in place at the time of Plaintiff's

retirement did not allow the use of a hearing aid in order to

meet these minimum medical requirements. (Def.'s Mem. ¶ 5, Ex

18.) [3]

A.   Plaintiff's Medical Disqualification

Plaintiff underwent a required periodic medical exam

in 1992 that revealed his hearing difficulties. (Def.'s Mem.

¶ 7, Ex. 4; Pl.'s Opp. Facts ¶ 7.) Plaintiff testifies that

prior to this medical exam, in 1989, he had been fitted for and

---

[3] The Court notes that Plaintiff disputes this paragraph; however, Plaintiff,
does not specifically dispute the existence of the USMS standard not allowing
the use of a hearing aide in taking the hearing test but rather disputes the
standard was effective. (Pl.'s Opp. Facts ¶ 5.)  Additionally, the USMS
Standards attached to Defendant's Memorandum clearly state that "a hearing
aid is not permitted." (Def.'s Mem. ¶ 5, Ex 18.)  "When opposing parties
tell two different stories one of which is blatantly contradicted by the
record the court should not adopt that version of the facts for purposes of
ruling on a motion for summary judgment." *Scott v. Harris* 550 US 272, 280
(2007).  Given this, the Court views the statements offered by Defendant as
undisputed.

owned a hearing aid; however, he testified that he "had them
[but] just didn't wear them."  (Pl.'s Mem. Ex. 2 (Oral
Deposition of Phillip Cochran, October 1, 2009) at 36.)
Plaintiff further testified that in 1991 and 1992 he wore his
hearing aid less than half of the time.  (Pl.'s Mem. Ex. 2 (Oral
Deposition of Phillip Cochran, October 1, 2009) at 36.)  In
September 1992, a physician reviewed the results of Plaintiff's
hearing examination and concluded that Plaintiff failed to meet
the USMS hearing standards, would need to protect himself from
being exposed to loud noises to avoid further loss, and that he
would need to undergo further hearing testing.  (Def.'s Memo.
¶ 8, Ex. 5-6; Pl.'s Opp. ¶ 8.)

On November 18, 1992, audiologist Andrea McDowell
reported the results of this testing to the USMS, explaining
that that she had evaluated Plaintiff's hearing "to determine if
his hearing loss would prevent him from performing his full
duties as a U.S. Marshall."  (Def.'s Memo. ¶ 9, Ex. 7; Pl.'s
Opp. ¶ 9.)  She reported that "according to the U.S. Marshall
Service standard," Plaintiff "no longer qualifies to serve as a
U.S. Marshall. . . ."  (Def.'s Memo. ¶ 9, Ex. 7; Pl.'s Opp.
¶ 9.)  On February 3, 1993, Dr. Mark Winter sent an additional
hearing evaluation report to the USMS, stating that Plaintiff
suffered from "a high frequency sensorineural hearing loss"
consistent with Plaintiff's statements during examination that

he was "unable to hear an ambulance easily while driving to the scene of an investigation" and had "difficulty [] understanding people in background noises." (Def.'s Memo. ¶ 11, Ex. 10; Pl.'s Opp. ¶ 11.)

Despite Plaintiff's failure to meet the USMS's hearing standards, Plaintiff's "percentage of binaural hearing loss would be less than 10%."[4] (Def.'s Memo. ¶ 11, Ex. 10; Pl.'s Opp. ¶ 11.) Significantly, when asked in a sworn deposition: "was your hearing trouble giving you any problems on a day-to-day basis" prior to having your hearing examined? Plaintiff responded "absolutely not." (Def.'s Mem. ¶ 11, Ex. 1 at 50; Pl.'s ¶ 11.) On March 23, 1993, the USMS informed the Plaintiff that "after reviewing the medical reports, it has been tentatively determined that your hearing loss presents a significant risk to yourself and/or others in the work environment. Thus it will be necessary for you to contemplate voluntary disability retirement" and warned that if he elected against retirement, it was "prepared to propose [his] removal based on medical unfitness." (Def.'s Mem. Ex. 11; Pl.'s Opp. ¶ 11.)

---

[4] The Court relies on the following definition of "binaural": "Having to do with the perception of sound with both ears: *binaural hearing." The American Heritage Dictionary of the English Language, Fourth Edition*, (2009); *accord, The American Heritage Stedman's Medical Dictionary*, (2002).

On April 5, 1993, Plaintiff declared his intention to "apply for Disability Retirement." (Def.'s Mem. Ex. 12.)[5] In his application for disability retirement, Plaintiff, subject to the criminal penalties of 18 U.S.C. 1001 (False Statements to the Government), made a number of undisputed statements regarding his hearing.[6]

- "Due to this hearing loss, I am unable to perform any of the duties of a Deputy U.S. Marshal. I am at risk daily whi[le] employed due to this loss and not being able to hear normal levels of sirens whistles, or other high frequency noises necessary for this job. I also put other employees and prisoners and the public in danger due to this problem. According to the doctors, I am putting myself at risk of losing all of my hearing is [sic] exposed to any more loud noise."

- "I have noticed more difficulty in hearing in noisy situations such as court and while in vehicles traveling . . . [i]n court situations I have to pay extra attention to my surroundings to be able to hear orders by the court or others in the room."

- "This has become extremely difficult while transporting prisoners in the vehicles due to road noise and noise in the vehicle. . . . This has endangered not only myself, but also put my fellow deputies and even the court and court family along with anyone in the area in extreme danger as I might not hear any potential threats."

- "I am unable to provide adequate protection for [the court family] in any instance where there could be a

---

[5] The Court notes that Plaintiff "disputes these facts [only] to the extent that the memorandum did not state that [Plaintiff] had a right to a representative."

[6] The Court notes that Plaintiff agrees that he made the statements and that they were made "under oath," however, he also adds that he "testified on the advice and counsel of USMS Chief of Retirement and Benefits Branch Joseph Moy." (Pl.'s Opp. ¶ 14.) For purposes of this Motion, the Court has accepted the statements as true, and takes Mr. Cochran, a career law enforcement officer, at his word.

potential threat. Due to the hearing loss, I cannot hear orders given by the judge, nor would I be able at all times to hear possible threats by prisoners of violence or escape."

(Def.'s Mem. ¶ 14, Ex. 13; Pl.'s Mem. ¶ 14.) Plaintiff's "disability retirement was granted and became effective in June 1993." (Compl. ¶ 15; See Def.'s Mem. Ex. 14.)

B.    Plaintiff's Request for Reinstatement

In December 1994, over a year after Plaintiff had taken disability retirement, the USMS Director announced that a panel had recommended a change to the hearing standards regarding the use of hearing ads during testing. (Def.'s Mem. ¶ 16, Ex. 19.) These changes were not approved and implemented until August 1995, when USMS operational personnel were allowed to utilize hearing aids during medical testing in certain circumstances. (Def.'s Mem. ¶ 16, Ex. 19.) An attorney representing Plaintiff contacted the USMS Director in January of 1995, requesting reinstatement on Plaintiff's behalf in light of the "change in USMS policy regarding hearing aids." (Def.'s Mem. ¶ 17; Compl. ¶ 23.) Cochran was informed, through counsel, that the proposed changes to the medical standards were still under review and that the USMS would be in a "better position to respond at that time." (Def.'s Mem Ex. 15.) After a series of communications with USMS headquarters' personnel regarding his request for reinstatement, Plaintiff, in September

1995, formally filed an administrative complaint of discrimination with the USMS seeking immediate reinstatement. (Def.'s Mem. ¶¶ 18-19.)

In pursuing his claim, Plaintiff followed all of the requisite administrative steps and received adverse decisions at each level, culminating with an appeal to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO"). On this appeal, the previous agency decision that Plaintiff was not the victim of unlawful discrimination was affirmed. (Def.'s Mem. ¶¶ 20-22.) Plaintiff originally filed his Complaint on June 9, 2006 in the District of Columbia, and it was subsequently transferred to this Court on November 21, 2006. [Dkt. 1.] The case was then dismissed, appealed, remanded for reconsideration and discovery taken. [See Dkt. 20-56.] It is currently before the Court on Defendant's Motion for Summary Judgment. [Dkt. 57.] Plaintiff has opposed. [Dkt. 64.] For the following reasons the Court grants Defendant's motion.

## II. Standard of Review

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Evans v. Techs. Applications & Serv., Co., 80 F.3d 954, 958-59 (4th Cir. 1996). The party

seeking summary judgment has the initial burden to show the
absence of a genuine issue of material fact. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material
fact exists "if the evidence is such that a reasonable jury
could return a verdict for the non-moving party." *Anderson v.
477 U.S. at 248. To defeat a properly supported motion for
summary judgment, the non-moving party "must set forth specific
facts showing that there is a genuine issue for trial." *Id.*
(quotation omitted). The facts shall be viewed, and all
reasonable inferences drawn, in the light most favorable to the
non-moving party. *Id*. at 255; *see also Lettieri v. Equant Inc*.,
478 F.3d 640, 642 (4th Cir. 2007).

The very existence of a scintilla of evidence or of
unsubstantiated conclusory allegations, however, is insufficient
to avoid summary judgment. *Anderson*, 477 U.S. at 248-52.
Summary judgment is proper "if the pleadings, the discovery and
disclosure materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that the movant
is entitled to judgment as a matter of law." *Triton Marine Fuels
Ltd., S.A. v. M/V PACIFIC CHUKOTKA*, 575 F.3d 409, 412 (4th Cir.
2009); *citing* Fed.R.Civ.P. 56(c); *see Anderson,* 477 U.S. at 248.

### III. Analysis

The Plaintiff brings his claims under the
Rehabilitation Act ("RA"), which can most readily be understood

10

as "the counterpart for federal agency defendants to the employment provisions of the Americans with Disabilities Act [the "ADA"]." *Mays v. Principi*, 301 F.3d 866, 868 (7th Cir. 2002); *see Edmonson v. Potter*, 118 Fed.Appx. 726, 728 (4th Cir. 2004) (applying ADA standards to RA claims). Under the RA a plaintiff may bring a "disparate treatment" claim alleging that an employer took adverse action against an employee on account of the employee's disability. *See Edmonson,* 118 Fed. Appx. at 728 (citing *Halperin v. Abacus Technology Corp.*, 128 F.3d 191, 197)(4th Cir. 1997). A plaintiff may also bring a claim based on the defendant's failure to provide a disabled employee with a reasonable accommodation. *Edmonson,* 118 Fed. Appx. at 728 citing *Rhoads v. FDIC,* 257 F.3d 373, 387 n. 11 (4th Cir. 2001).

In the Fourth Circuit, to establish a *prima facie* case for failure to accommodate "under the Rehabilitation Act, an employee must show:

> (1) she was an individual with a disability within the meaning of the ADA; (2) the employer had notice of her disability; (3) with reasonable accommodation, she could perform the essential functions of the position; and (4) the employer refused to make such accommodations.

*Id*. To establish discrimination based on disparate treatment under the RA, Plaintiff

> must demonstrate that [he]: (1) is an individual with a disability within the meaning of the ADA; (2) is otherwise qualified for the job in question; and (3)

suffered an adverse employment action solely because
of the disability.

*Edmonson*, 118 Fed.Appx. at 728 (citing *Halperin v. Abacus Technology Corp.*, 128 F.3d at 197). For either type of claim Plaintiff must establish that he was a qualified individual with a disability within the meaning of the Act.[7]  *See Edmonson,* 118 Fed. Appx. at 728; *Rhoads,* 257 F.3d at 387; *Paris v. ARC/Davidson County, Inc.*, 307 F. Supp. 2d 743, 756 (holding "[u]nder both claims, Plaintiff must initially prove that []he qualifies as disabled under the ADA in order to fall within the ADA's protected class.")

A.   Count I: "Constructive Discharge"

For an individual to be considered "disabled" within the meaning of the RA he must "(i) ha[ve] a physical or mental impairment which substantially limits one or more major life activities; (ii) ha[ve] a record of such an impairment; or (iii) [be] regarded as having such an impairment."  29 U.S.C. § 705(20)(B); *see Hooven-Lewis v. Caldera,* 249 F.3d 259, 268 (4th Cir. 2001). "Whether [Plaintiff] meets the definition of the

---

[7] Plaintiff argues that he has alleged both disparate impact and failure to accommodate claims; however, Plaintiff's sworn interrogatory responses objected to Defendant's interrogatory on the basis that both of his Rehabilitation Act "claims involve failure to provide reasonable accommodation, *not* disparate treatment."  (Def.'s Ex. 3, at 4)(emphasis supplied)(see Def.'s Ex. 3. at 6 (same)).  For both types of claims Plaintiff must demonstrate that he was a "qualified individual with a disability," thus the court's determination regarding Plaintiff's statutes as an "individual with a disability" is dispositive of either type of claim.  As Plaintiff has affirmed in its papers and at oral argument that he intends to advance both types of claims, this Court will, to the extent necessary, analyze both.

statute, and therefore can bring a claim under the statute, is a question of law for a court, not a question of fact for a jury."[8]  *Hooven-Lewis* 249 F.3d at 268.   The Court will take each of these in turn.

### 1.  *Actual Disability*

For Plaintiff to "qualify as disabled," he must "initially prove that he or she has a physical or mental impairment."  *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 194 (2002).[9]  Defendant concedes that Plaintiff's hearing loss qualifies as an "impairment" for RA purposes.  (Def.'s Mem.

---

[8] Plaintiff's Opposition attempts to raise a "disputed issues of material fact" regarding the Plaintiff's status as "disabled."  In support of this contention, Plaintiff cites to arguments made, and withdrawn, by the USMS during administrative proceedings, holding that Plaintiff was "disabled" within the meaning of the RA.  (Pl.'s Opp. II.B.)  These statements were withdrawn by the USMS in the wake of the Supreme Court's decision in *Toyota Motor Mfg. v. Wiliams*, 534 U.S. 184 (2002), regarding the legal definition of "disability."  (*See* Def.'s Reply 11.)  Indeed, Defendant clearly and unequivocally *denied* those same legal conclusions when asserted as requests for admissions during proceedings in this Court.  (Def.'s Mem. Ex. 32, at 3.)  Furthermore, the administrative judge in that proceeding recognized that he was "not bound by any admissions, particularly those that involve *legal conclusions*."  (*See* Def.'s Reply 11)(emphasis supplied).  Regardless, the determination of whether the Plaintiff qualifies as "disabled" within the meaning of the RA and can bring a claim under the statute is a question of law for the Court.

[9] Plaintiff argues that *Toyota* as well as, *Sutton v. United Airlines, Inc.*, 527 U.S. 471 (1999)(see intra at 17), should not apply retroactively based on the three factor test laid down in *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-107 (1971).  (Pl.'s Opp.  II.A.)  The retroactivity of these decisions is not an open question in the Fourth Circuit.  The Supreme Court has announced that when it "applies a rule of federal law to the parties before it, that rule is the controlling interpretation in all cases . . . and as to all events, regardless of whether such events predate or postdate our announcement of the rule."  *Harper v. Virginia Dep't of* Taxation, 509 U.S. 86 (1993).  Furthermore, the Fourth Circuit has specifically applied *Toyota* and *Sutton's* strictures to claims brought under the ADA. for conduct which occurred prior to these decisions.  *See Pollards v. High's of Baltimore, Inc.*, 281 F.3d 462 (4th Cir. 2002).

14.)[10]  Impairment alone, however, is not sufficient to qualify
as "disabled" for purposes of the RA.  That impairment must
"limit a major life activity" and that limitation must be
"substantial." *Toyota,* 534 U.S. at 195.  For an impairment to
become a "substantial" limitation it must "prevent[] or severely
restrict[] the individual from doing activities that are of
central importance to his life." *Toyota* 534 U.S. at 196.  Both
"hearing" and "working" are considered by this Court to be major
life activities.  29 C.F.R. § 1630.02.  Thus, the burden is on
the Plaintiff to demonstrate that his partial hearing loss has
severely restricted either his hearing or his ability to work.

      Plaintiff has made a number of undisputed sworn
statements regarding the effect of his impairment on the major
life activity of "hearing."  In his October 9, 2009 deposition:

          Government:    Now, up until this point where you
      were starting learning about the [] examinations that
      you took and the physical in 1992 and then the [USMS
      audiologist] examination was your hearing trouble
      giving you any problems on a day-to-day basis?

          Plaintiff:     Absolutely not.

(Pl.'s ¶ 11; Def.'s Mem. Ex. 1 at 50.)  Prior to the 1992
medical exam, Plaintiff had been fitted for, and owned, a

---

[10] Defendant acknowledges that the ADA Amendments Act of 2009, passed in part
in reaction to *Toyota*, expands the class of protected individuals protected
by this statute. This Amendment does not apply, however, to a civil action
arising out of a course of conduct that took place over ten years ago and
filed with this court two years prior to the Amendment's passage. *See
Bateman v. Am. Airlines, Inc.*, 614 F. Supp.2d 660, 670 n.1 (E.D. Va. 2009);
*Fredricksen v. UPS*, 581 F.3d 516, 521 n.1 (7th Cir. 2009).

hearing aid; however, he testified that in 1989 he "had them
[but] just didn't wear them." (Pl.'s Mem. Ex. 2 (Oral
Deposition of Phillip Cochran, October 1, 2009) at 36.)
Plaintiff further testified that in 1991 and 1992 he wore his
hearing aid less than half of the time. (Pl.'s Mem. Ex. 2 (Oral
Deposition of Phillip Cochran, October 1, 2009) at 36.)
Furthermore, Dr. Winter's report states that Plaintiff's
"percentage of binaural hearing loss would be less than 10%."
(Def.'s Mem. ¶ 11, Ex. 10; Pl.'s Opp. ¶ 11.)

       In the substantially similar case of *Franterrigo v.
Akal Sec., Inc.*, a federal Courtroom Security Officer ("CSO")
(independent contractors with the USMS) failed to meet the
relevant hearing standards. 2008 WL 4787548 at *5 (S.D.N.Y.,
Oct. 28, 2008.) There, the plaintiff was dismissed after
failing a hearing test on which he was unable to use a hearing
aid. *Id.* As the Court found, "when asked in his deposition
whether his 'loss of hearing [had] impacted [his] day-to-day
life in any way,' [plaintiff's] reply, remarkably, was 'No.'"
*Id.* The court concluded that the plaintiff's testimony was
fatal to his claim. *Id.* Specifically the court there found
that "no reasonable juror could find that [plaintiff's] hearing
loss impacted his ability to undertake the major life activity
of hearing, given [plaintiff's] direct and unequivocal sworn
statements." *Id.*

Similarly, in *Foore v. City of Richmond*, 6 Fed. Appx. 148 (4th Cir. 2001), a plaintiff police officer was placed on disability retirement due to his blindness in one eye and lack of depth perception. *Id.* The officer sued the city under the ADA for its refusal to reinstate him. *Id.* The Fourth Circuit reversed a jury's verdict for the plaintiff, holding that the officer was not "disabled" within the meaning of the Act. *Id.* at 153. Specifically, despite plaintiff's "monocular vision," the court found that he was not substantially "limited [in] the major life activity of seeing," given plaintiff's and medical expert testimony that he can read, drive, and has a full range of peripheral vision. *Id.*

The present case is analogous to both *Franterrigo* and *Foore*. Plaintiff's own uncontroverted sworn statements that his hearing was "absolutely not" giving him trouble and that his hearing loss was so unsubstantial that he rarely wore the hearing aid provided to him resolve the issue. Plaintiff's impairment did not "substantially limit" the major life activity of hearing at the time of his retirement.

Plaintiff could also demonstrate that his impairment substantially limited his major life activity of "working." To do so the Plaintiff must be "significantly restricted in the ability to perform either a *class of jobs* or a broad range of jobs in various classes as compared to the average person having

comparable training, skills and abilities." *Sutton*, 527 U.S. at 492 (quoting 29 C.F.R. § 1630.02(j)(3)(i)).  Importantly, "the inability to perform *a single, particular job does not constitute a substantial limitation* in the major life activity of working."  29 C.F.R. § 1630.2 (emphasis supplied).  Here, the Plaintiff has offered no evidence showing a restriction in the ability to perform a particular "class" of jobs and has even argued to the contrary:  "Plaintiff testified that he held law enforcement positions subsequent to his removal from the USMS and that he was able to successfully perform the same type of duties in those positions that was required of him in the DUSM position."  (Pl.'s Opp. III.A, Ex. 3 (MSPB Hearing Tr.) at 62-64.)  Additionally, although not set out in the statement of facts, Defendant points out that Plaintiff testified on October 9, 2009 that he had the ability to perform the work of a "day shift security supervisor at Hendrick Hospital in Abilene [Texas]" for the past ten years.  (Def.'s Mem. Ex. 1 (Oct. 9, 2009, Dep. Tr.) at 13)).  In this capacity, Plaintiff testified he has the ability to work the forty-hour a week job with occasional overtime.  (Def.'s Mem. Ex. 1 (Oct. 9, 2009, Dep. Tr.) at 13).  Given this testimony and the lack of evidence to the contrary, the Court finds that Plaintiff was not substantially limited in the major life activity of working at the time of his retirement.

> 2.   *Having a "Record Of" the Disability*

The Court must next consider if Plaintiff can establish a disability by "demonstrating that [he] has a record of an injury or impairment."  While the analytical framework is slightly different, ultimately the Court must make a similar determination: whether the Plaintiff have "a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Foore*, 6 Fed. Appx. at 147; 29 C.F.R. § 1630.2(k).

Here, the record demonstrates that statements made by the USMS Medical Staff and the USMS medical records show that Plaintiff's hearing had deteriorated to the point he was no longer capable of meeting the USMS hearing standards.  (Def.'s Memo. ¶ 9, Ex. 7; Pl.'s Opp. ¶ 9.)  Those same reports state that Plaintiff's medical history demonstrated that the Plainitiff's hearing difficulties were limited to "a high frequency sensorineural hearing loss" and that Plaintiff only suffered from overall "binaural hearing loss [of] less than 10%."  (Def.'s Memo. ¶ 11, Ex. 10; Pl.'s Opp. ¶ 11.)  This Court has determined that Plaintiff does not have a history or record of an "impairment" that "substantially limits a major life activity."  29 C.F.R. § 1630.2(k); See *Foore*, 6 Fed. Appx. at 147.  While there is a record showing Plaintiff was no longer qualified for the specific job of serving in the USMS, the same

record shows minimal overall hearing loss and certainly does not establish a history or misclassification of such a "substantial impairment." *See Foore*, 6 Fed. Appx. at 153.

### 3. *"Regarded as" Disabled*

Finally, to demonstrate that he was "disabled" because the USMS "regarded" him as such, Plaintiff must show that the USMS believed that he had a "substantially limiting impairment that [he] [did] not have" or that [he] has a substantially limiting impairment "when, in fact, the impairment is not so limiting." *Sutton*, 527 U.S. at 489. Again, Plaintiff must demonstrate that Defendant believed Plaintiff's hearing condition substantially limited a major life activity. See *Id* at 490. It is not sufficient for Plaintiff to offer evidence that the USMS believed that he was unqualified for his particular job as a DUSM, rather he must show that Defendant believed Plaintiff was substantially limited in the major life activity of working or hearing. *Serrano v. County of Arlington*, 986 F. Supp. 992, 999 (E.D. Va. 1997).

Two similar cases are instructive here. In *Serrano v. County of Arlington*, the Court found that the county's "belief that plaintiff was unsuited for the particular demands of a firefighter was based on sound medical knowledge concerning the plaintiff's impairment, and foreclosed *only the position of firefighter*." *Id*. (emphasis supplied). Similarly, in *Walton v.*

*U.S. Marshals Service*, the Ninth Circuit found that a USMS medical report disqualifying the plaintiff from her employment as a CSO due to a hearing impairment was not sufficient evidence to raise a genuine issue of material fact concerning whether or not the USMS "'regarded' [plaintiff] as disabled in a major life activity." *Walton,* 492 F.3d 998, 1006 (9th Cir. 2007). There is not sufficient evidence presented here to raise a genuine issue of material fact for a reasonable jury to find that Defendant "regarded Plaintiff" as disabled within the meaning of the Act; the Defendant did not.

For these reasons, the Court finds no reasonable jury could determine that Plaintiff was "disabled" within the meaning of the Act at the time of his retirement. The Court finds that Plaintiff was not disabled at that time and will grant Defendant's Motion to Dismiss as to Count I.

This Court briefly notes that while its conclusion that Plaintiff was not "disabled" is dispositive of the claim, Plaintiff has also not made a conclusive showing that he was a "qualified individual" within the meaning of the Act. Namely, he could not "perform the essential functions of his job." *Tyndall v. Nat'l Educ. Ctrs., Inc.,* 31 F.3d 209, 213 (4th Cir. 1994).

As stated above, the "essential functions" of a DUSM are diverse and difficult. In the Fourth Circuit, "essential

functions" are those functions "that bear more than a marginal relationship to the job at issue." *Id.* As stated in Section I above, a DUSM must be able to provide protection of judicial officers, juries, and members of the court, as well as, safely transport and handle prisoners. (Def. Mem. Ex. 13.; Pl.'s Opp. ¶ 3.) Plaintiff's own statements made in his application for disability benefits that he was having "difficulty in hearing in noisy situations such as court and while in vehicles traveling" (Def.'s Ex. 13; Pl.'s Opp. ¶ 3); that it was "extremely difficult while transporting prisoners in the vehicles due to road noise;" and that "due to hearing loss, I cannot hear orders given by the judge, nor would I be able at all times to hear possible threats by prisoners of violence or escape," all demonstrate Plaintiff could no longer perform this highly specialized job. (Def.'s Ex. 13; Pl.'s Opp. ¶ 3.)[11] These factual statements made under oath clearly demonstrate Plaintiffs inability to perform the "essential functions" of a DUSM.[12]

---

[11] Plaintiff counters these direct sworn statements with evidence that his last performance review prior to his assignment to "light duties" due to his hearing impairment gave him an "excellent rating" (Def. Ex. 13 at 45), and his supervisor's statement that Plaintiff "was able to perform his duties at the time of his retirement." (Pl.'s Opp. Ex. 9.) These are not sufficient to overcome the sworn statements made in his application for government benefits.

[12] Plaintiff argues that the statements made in his sworn application for disability retirement should not be found to be *per se* evidence that summary judgment should be granted. This Court agrees. Supreme Court has held that when "sworn assertion[s] in an application for disability benefits . . . appear[s] to negate an essential element of [plaintiff's] ADA case . . . . ."

Finally, as to Count I, Defendant claimed that "with accommodation" of a hearing aid, he would be a "qualified individual" within the meaning of the Act.  Again, the Court's earlier determination that he was not "disabled" is dispositive here, however, the Court also notes that the accommodation of a hearing aid was directly contrary to USMS medical standards at the time of Plaintiff's retirement.  Employer's are allowed to have such qualification standards so long as they are "job related" and "consistent with business necessity."  42 U.S.C. § 12113(a).  As the Eleventh Circuit has found, the USMS, "adopted the [hearing aide] ban to ensure that all officers can perform their jobs safely and effectively in the event they must rely on their unaided hearing."  *Allmond v. Akal Secuirty, Inc.,* 558 F. 3d 1312, 1317-1318 (11th Cir. 2009).  Indeed, "when considered in light of the tremendous harm that could result if a security officer [or DUSM] could not perform the essential hearing functions of his job at a given moment, [the court] accept[s] this justification as legitimate and wholly consistent with business necessity."  *Id.;* See *Fraterrigo*, 2008 WL 4787548, at *7-8.  Plaintiff argues that the USMS decision to change the

---

thus "plaintiff cannot simply ignore the apparent contradiction. . .rather she must proffer sufficient explanation.  *Cleveland v. Policy Management Systems Corp.,* 526 U.S. 795, 806 (1999); *EEOC v. Stowe-Pharr Mills, Inc.* 216 F.3d 373, 378 (4th Cir. 2000).  Plaintiff has not offered sufficient explanation here that would warrant a reasonable juror concluding that despite Plaintiff's earlier statements, he could "perform the essential functions" of his job.

hearing test standards and allow the use of hearing aids in limited circumstances indicates that the rule was not a "business necessity" but offers no case law for the proposition that this change in the rule *requires* the Court to find that it was not a "business necessity." Indeed, such a rule would, as Defendant notes, "retard the purposes behind the ADA" as it would provide an incentive to "forego potential changes to such qualification standards for fear of putative ADA liability." (Def.'s Mem 17.) In any case, this Court finds the analysis in *Allmond* persuasive, and accepts the justification for the hearing standards as "legitimate and wholly consistent with business necessity."

As the Plaintiff was not disabled within the meaning of the RA, and for the reasons stated above, this Court will grant Defendant's Motion to Dismiss as to Count I: Constructive Discharge.

B.   Count II: Refusal to Reinstate

Plaintiff also argues that Defendant discriminated against him by "refusing to consider reinstating Plaintiff because of his hearing loss" and by not reasonably accommodating his hearing loss during the reinstatement request process. (Compl. ¶ 39.) The Court again notes the Plaintiff's sworn interrogatory responses objected to Defendant's interrogatory on the basis that both of the RA "claims involve failure to provide

reasonable accommodation, *not* disparate treatment." (Def.'s Ex. 3, at 4)(emphasis supplied)(see Def.'s Ex. 3. at 6 (same).) Nevertheless, as in the analysis in Section III.A. above, for either claim to overcome a motion for summary judgment the Plaintiff must be a qualified individual with a "disability" under the meaning of the Act. *See Edmonson,* 118 Fed. Appx. at 728 (citing *Rhoads,* 257 F.3d at 387 n. 11); *Edmonson,* 118 Fed. Appx. at 728 (*citing Halperin v. Abacus Technology Corp.*, 128 F.3d at 197); *Paris v. ARC/Davidson County, Inc.*, 307 F. Supp. 2d at 756. Defendant also provides two additional defenses to Plaintiff's claim: (1) that Plaintiff was simply not eligible for reinstatement under USMS policy for reasons unrelated to his hearing; and (2) that the USMS did not refuse to provide Plaintiff with reasonable accommodation because no accommodation request was made.

1. *Qualified Individual with Disability*

The analysis that applied to Plaintiff's initial claim of "constructive discharge" applies here, except that for Count II the Court must apply that analysis to the Plaintiff as he was at the time he requested reinstatement rather than at the time or his retirement. After reviewing the undisputed facts before it, this Court finds that no reasonable jury could determine that Plaintiff's hearing impairment "substantially limited" his "major life activities" of hearing and working at the time he

applied for reinstatement. *See Edmonson,* 118 Fed. Appx. at 728

(citing *Rhoads,* 257 F.3d at 387 n. 11); *Edmonson,* 118 Fed. Appx.

at 728 (*citing Halperin v. Abacus Technology Corp.*, 128 F.3d at

197); *Paris v. ARC/Davidson County, Inc.*, 307 F. Supp. 2d at

756.  Plaintiff was not "disabled" at the time he sought

reinstatement to the USMS.

Regarding the major life activity of "hearing,"

Plaintiff testified in 2000 that "every single problem" listed

in his disability retirement application in 1993 as arising from

his hearing loss "could be addressed with the new hearing aids"

available in 1995.  (Opp. Ex. 3, MSPB Hearing Tr. at 44; *See*

Opp. at 26.)  Under the legal precedent applicable at the time

the relevant conduct occurred, a determination of whether an

individual was "disabled" takes into account the methods

utilized by the individual to "correct for, or mitigate, a

physical or mental impairment."  *Sutton,* 527 U.S. at 481

(finding in part, that because petitioners alleged that, with

corrective measures their vision ceased to be below average,

they were not actually disabled under the ADA).[13]  As in *Sutton,*

Plaintiff's own testimony shows he was not "disabled" under the

Act, as his hearing problem at the time of his request for

reinstatement was ameliorated by the use of modern hearing aids.

Defendant also tried to obtain a new evaluation of Plaintiff's

---

[13] See *supra* n. 10.

hearing impairment in an effort to place Plaintiff on the Priority Placement Referral System ("PPRS" or "PEPPERS"), which would have given him priority placement for vacant positions both in the USMS and other agencies over those individuals applying for the first time.  5 C.F.R. §§ 220.201(a), 330.205. In June of 1995, USMS personal requested that Plaintiff complete an additional application form for PPRS and "upon receipt of forms, [the USMS] will arrange for you to have a medical examination at U.S. Marshals Service approved facility.  This will be done at USMS expense."  (Def.'s Mem. Ex. 16.)  There is no evidence provided by Plaintiff that he ever responded to this request and Plaintiff did not submit to further testing.[14]

Furthermore, the effect of Plaintiff's impairment on his major life activity of "working" remained unchanged.  As discussed in Section III.A. above, Plaintiff testified that he held law enforcement positions subsequent to his removal from the USMS and that he was able to successfully perform the same type of duties in those positions that was required of him in the DUSM position.  (Pl.'s Opp. III.A, Ex. 3 (MSPB Hearing Tr.) at 62-64.)  Additionally, although not set out in the statement

---

[14] The Court notes that Plaintiff contends the USMS destroyed these documents, however, the evidence he provides speaks to the USMS document destruction policy rather than to specific testimony as to the relevant documents. (Pl.'s Opp. at 30, Ex. 14.)  In fact, Plaintiff does not include such information in his statement of facts but rather argues "it would not be surprising for the PPRS information . . . to be destroyed."  (Pl.'s Opp. at 30.)

of facts, Defendant points out that Plaintiff testified on October 9, 2009 that he had the ability to perform the work of a "day shift security supervisor at Hendrick Hospital in Abilene [Texas]" for the past ten years. (Def.'s Mem. Ex. 1 (Oct. 9, 2009, Dep. Tr.) at 13)). As this Court has found, "the inability to perform *a single, particular job does not constitute a substantial limitation* in the major life activity of working." 29 C.F.R. § 1630.2 (emphasis supplied.) Plaintiff's hearing impairment has clearly not inhibited his major life activity of working.

The "record of" and "regarded as" formulations for "disability" outlined in sections III.A.2-3 *supra*, get Plaintiff no farther. Again, the USMS records regarding Plaintiff at the time of the reinstatement request did not show that Plaintiff was "disabled" within the meaning of the Act. The USMS was not prepared to rely solely on Plaintiff's statements in 1993 regarding his "disability" but instead attempted to ascertain Plaintiff's condition with a new medical evaluation at "USMS expense" (Def.'s Mem. Ex. 16.) and there is no evidence that Plaintiff ever submitted to such an evaluation. By offering a new medical evaluation Defendant demonstrates that the USMS was prepared to take the Plaintiff as he came in 1995, using the new medical results as applied to the new medical standards in evaluating the Plaintiff. While, the Defendant concedes that

USMS personnel reviewed Plaintiff's prior medical tests in evaluating Plaintiff's request for reinstatement, this review is not sufficient to that "the employer, in making the employment decision, [relied] on the record indicating the plaintiff has or had a substantially limiting impairment." *River-Mercado v. Scotiabank*, 571 F.Supp.2d 279, 287 (D.P.R. 2008). In fact, as discussed above, the record did not establish Plaintiff had a "disability" at all, merely that his hearing was no longer sufficient to qualify for USMS standards in 1993. Plaintiff has not provided sufficient evidence for this Court to find that a reasonable jury could determine that the USMS had a "record of" or "regarded [Plaintiff] as "disabled" within the meaning of the Act to evaluating his request for reinstatement.

The Plaintiff was not "disabled" within the meaning of the RA at the time of his request for reinstatement.

2. *Eligibility for Reinstatement*

Even if Plaintiff were found to be "disabled" at the time he requested reinstatement, his claims of discrimination during his request for reinstatement fall short. Plaintiff's claim suffers from a "material defect," namely that he was "not eligible" to be reinstated as he had been out of the agency's employ for more than one year. 5 C.F.R. § 220.201(a). "The reemployment priority list (RPL) is the mechanism agencies use to give reemployment consideration to their former competitive

service employees separated by reduction in force (RIF) or fully recovered from a compensable injury after more than 1 year. *Id.* Defendant offered Plaintiff the opportunity to be placed on what was then called the Priority Placement Referral System (PPRS) which would have given him priority placement for vacant positions both in the USMS and other agencies over those individuals applying for the first time. 5 C.F.R. §§ 220.201(a), 330.205. Plaintiff flatly rejected this offer stating: "I was told I could be put on the PEPPERS List and would be considered f[or] other positions. This is not what I want." (Def.'s Mem. 28, Ex. 17.) This Court finds no evidence the USMS decision to follow department policy and offer of PPRS placement in lue of "reinstatement" after a longer than one year absence was based on Plaintiff's hearing.

### 3. *Provide a Reasonable Accommodation*

Similarly, there is no evidence sufficient to find that Plaintiff even needed a reasonable accommodation. Setting aside the "accommodation" of direct reinstatement itself, S*ee Siefken v. Village of Arlington Hieghts*, 65 F.3d 664, 666-667 (7th Cir. 1995), as discussed above, when the USMS attempted to offer Plaintiff priority placement for USMS vacancies through PPRS, Plaintiff rejected it. When the USMS attempted to conduct a new medical evaluation of Plaintiff to determine what if any accommodation might be necessary were it to give him priority

placement, there is no evidence that Plaintiff responded to the request or had another medical evaluation.  Without a medical evaluation to determine what "reasonable accommodation" might be necessary, it is difficult for the Court to determine what accommodation the USMS *could* have refused Plaintiff.

In any case, as this Court has held that no reasonable jury could find that Plaintiff was an individual with a "disability" within the meaning of the Act at the time of his reinstatement request and the Court will grant Defendant's Motion for Summary Judgment as to Count II.

### III. Conclusion

For these reasons the Court will grant Defendant Eric H. Holder's Motion for Summary Judgment.


February 1, 2010
Alexandria, Virginia

_____
/s/
James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE